IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 25-1775/No. 25-2036

SUSAN KERR,

Plaintiffs, Appellants,

v.

ALLEGHENY COUNTY, JACOB PORTER, UNIVERSITY OF PITTSBURGH
MEDICAL CENTER (UPMC) and WESTERN PSYCHIATRIC INSTITUTE
AND CLINIC,

Defendants, Appellees.

APPELLANT'S BRIEF
JOINT APPENDIX - VOLUME I

On Appeal from the Court's Orders in the United States District Court for
the Western District of Pennsylvania, Civil Action No. 2:24-cv-0805, dated
March 28, 2025 and May 6, 2025, and Report and Recommendation dated
February 14, 2025, granting motions to dismiss.

COUNSEL FOR APPELLANT

Elizabeth A. Tuttle, Esquire
Massimo A. Terzigni, Esquire
LAW OFFICES OF JOEL SANSONE
Two Gateway Center, Suite 1290
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  August 18, 2025

## TABLE OF CONTENTS

TABLE OF CASES, STATUTES AND AUTHORITIES . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . 2

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE STANDARD OR SCOPE OF REVIEW . . . . . . . 3

CONCISE STATEMENT OF THE CASE . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF COUNSEL

APPENDIX VOLUME I

1. Notice of Appeal dated April 22, 2025.              Appx001
2. Notice of Appeal dated May 28, 2025.                Appx002
3. Report and Recommendation dated February 14, 2025. Appx003-018
4. Order of Court dated March 28, 2025.                Appx019-026
5. Order of Court dated May 6, 2025.                   Appx027

CERTIFICATE OF SERVICE

## TABLE OF CASES, STATUTES AND AUTHORITIES

<u>CASES</u>                                                                       <u>PAGE</u>

*Gage v. Borough of New Providence*, No. 25-1495,                    3
2025 U.S. App. LEXIS 18365 at *3.

*Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).             3

*Phillips v. County of Allegheny*, 515 F.3d 224, 233                 3
(3d Cir. 2008).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173        3, 4
L. Ed. 2d 868 (2009).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,                 3
127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).       4, 29

*Covington v. Int'l Ass'n of Approved Basketball Officials*,         4
710 F.3d 114, 117-18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*,                            4
2014 U.S. App. LEXIS 6150, 6-7 (3d Cir. 2014).

*Chesher v. Allegheny Cnty.*, 2024 U.S. Dist. LEXIS 88175,           4
*8 (W.D. Pa. 2024).

*Bloch v. United States HUD*, 2024 U.S. Dist. LEXIS 106830,          4
*7 (W.D. Pa. 2024).

*Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007).   4

*Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).         4

*Brizuela v. Highmark Blue Cross Blue Shield of Pa.*,                          13
2023 U.S. Dist. LEXIS 66627, *5 (W.D. Pa. 2023).

*Badgerow v. Walters*, 142 S.Ct. 1310, 1315,                                    13
212 L. Ed. 2d 355 (2022).

*Gunn v. Minton*, 568 U.S. 251, 257, 133 S. Ct. 1059, 185                       13
L. Ed. 2d 72 (2013).

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).                           13, 14

*Filarsky v. Delia*, 566 U.S. 377, 383, 132 S. Ct. 1657,                        13
182 L. Ed. 2d 662 (2012).

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937,                             13, 14
102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

*Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005).                           13

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 638                                 14
(3d Cir. 1995).

*Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 234                        14
(3d Cir. 2002).

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722                     14
(1961).

*Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001).               14

*Groman v. Township of Manalapan*, 47 F.3d 628, 639 n.17                        14
(3d Cir. 1995).

*Schorr v. Borough of Lemoyne*, 265 F. Supp. 2d 488, 492                  14, 16, 17
(M.D. Pa. May 30, 2003).

*Benn v. Universal Health Systems*, 371 F.3d 165 (3d Cir. 2004).    15

*West v. Atkins*, 487 U.S. 42, 54-56, 101 L. Ed. 2d 40,    16-17
108 S. Ct. 2250 (1988).

*Ruhlmann v. Ulster County Dep't of Soc. Servs.*,    17
234 F. Supp. 2d 140, 165, (N.D.N.Y. 2002).

*Tewksbury v. Dowling,* 169 F. Supp. 2d 103, 109    17
(E.D.N.Y. 2001).

*Moore v. Wyo. Med. Ctr.*, 825 F. Supp. 1531 (D. Wyo. 1993).    17

*Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396    17
(N.D. N.Y. 1992).

*Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018).    19

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).    19

*Chesher*, 2024 U.S. Dist. LEXIS 88175, at *9-10.    19

*Manley v. Augusty,* 2001 U.S. Dist. LEXIS 11516    19, 20, 21
(E.D. PA. Aug. 9, 2001).

*Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998).    23

*Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).    23-24

*Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804,    24-25
60 L. Ed. 2d 323 (1979).

*Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195,    25
109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).

*Harris v. Lehigh County Office of Children & Youth Servs.*,    25
418 F. Supp. 2d 643, 647 (E.D. Pa. June 16, 2005).

*Studli v. Children & Youth & Families Cent. Reg'l Office,*
346 F. App'x 804, 813 (3d Cir. 2009).                                           27

*Cornell Cos. v. Borough of New Morgan,* 512 F. Supp. 2d
238, 262 (E.D. Pa., May, 2007).                                                 28

*Pritchett v. Ellers,* 324 Fed. Appx. 157, 159 (3d Cir. 2009).                 28

*Diamond v. Univ. of Pittsburgh Med. Ctr.,* 2024 U.S. Dist.                    28-29
LEXIS 66274, *9-10 (W.D. Pa., April, 2024).

*Ostrowski v. Con-Way Freight, Inc.,* 543 F. App'x 128, 131                    28-29
(3d Cir. 2013).

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009).                  29

*Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 307                         29

*Geness v. Admin. Office of Pa. Courts,* 974 F.3d 263, 277                     30
(3d Cir. 2020).

*Furgess v. Pa. Dep't of Corr.,* 933 F.3d 285, 289 (3d Cir. 2019).            30
(3d Cir. 1999).

<u>STATUTES</u>                                                          <u>PAGE</u>

28 U.S.C. Section 1291                                                          1

28 U.S.C. Section 1331                                                          1

42 U.S.C. Section 1983                                                          1, 2, 15, 18
                                                                               32

42 U.S.C. Section 12131                                                         1, 2

42 U.S.C. Section 12132                                                         27-28

42 U.S.C Section 12102(A)                                                       28

Federal Rule of Appellate Procedure 4(a)(1)(A)    1

Federal Rule of Civil Procedure 12(b)(6)    3, 10

Fourteenth Amendment of the United States Constitution    1, 2, 32

Mental Health Procedures Act 50 Pa.C.S. Section 302    5, 6, 7, 8, 9, 10, 15, 17, 18, 20, 21, 22, 23, 25, 26, 27, 30

28 C.F.R. Section 36101(b)    28

29 C.F.R. Section 1630.1(c)(4)    28

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Pennsylvania has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the underlying dispute arises from the Constitution, laws and/or treaties of the United States, namely, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. §12313 *et seq.* ("ADA").

The United States Court of Appeals for the Third Circuit has jurisdiction over Appellant's appeal from the Lower Court's grant of motion to dismiss by Orders dated March 28, 2025, and May 6, 2025, pursuant to 28 U.S.C. § 1291.

Appellant timely filed a Notice of Appeal on April 24, 2025, regarding the Lower Court's March 28, 2025, Order; and on May 28, 2025, regarding the Lower Court's May 5, 2025, Order; within the thirty (30) day appeal period set forth by Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

A.    Whether the Lower Court erred in granting Appellees' motions to dismiss, specifically, when it held that:

1. Hospital Appellees are not state actors;

2. That the Appellees' failure to complete Part IV of the Application for Involuntary Emergency Examination and Treatment (hereinafter "the application"), which required that the Appellant be explained her rights, and Part V of the application, which required that the Appellant's personal property and the premises she occupies were secure, did not constitute a violation of Appellant's procedural due process rights pursuant to the Fourteenth Amendment and 42 U.S.C. §1983;

3. That Appellant has not pled a viable claim pursuant to Title II of the Americans with Disabilities Act ("ADA"); and

4. That Appellant's municipal liability claim must be dismissed.

## STATEMENT OF RELATED CASES

Appellant is not aware of any cases related to the action that is the subject of this appeal.

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

This Honorable Court exercises plenary review of the District Court's grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Gage v. Borough of New Providence*, No. 25-1495, 2025 U.S. App. LEXIS 18365, at *3 (3d Cir. July 24, 2025) citing *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). In deciding a motion under Fed.R.Civ.P. 12(b)(6), the Lower Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). This Court discussed the standard for reviewing 12(b)(6) motions when it observed:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will

reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 2014 U.S. App. LEXIS 6150, 6-7 (3d Cir. 2014).

"The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard." *Chesher v. Allegheny Cnty.*, 2024 U.S. Dist. LEXIS 88175, *8 (W.D. Pa. 2024) citing *Iqbal*, 556 U.S. at 678. Moreover, any reasonable inferences in this regard "should be considered in the light most favorable to the plaintiff." *Bloch v. United States HUD*, 2024 U.S. Dist. LEXIS 106830, *7 (W.D. Pa. 2024) citing *Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

## CONCISE STATEMENT OF THE CASE

Appellant brought a three (3) count Complaint alleging violations of her rights pursuant to the Fourteenth Amendment to the United States Constitution, as well as the ADA, against Allegheny County ("County"); Jacob Porter ("Porter"), a case worker and administrator for Appellee County; University of Pittsburgh Medical Center ("UPMC"); Western Psychiatric Institute and Clinic ("Western Psych"), a division of Appellee UPMC; and John/Jane Doe, a director at Appellee Western Psychiatric Institute and Clinic.[1]

### A. Facts Pled

At all times relevant to Appellant's Complaint, Appellee Porter was employed as a caseworker for Appellee County, purporting to act within the full scope of his authority and office and under color of state law and pursuant to the statutes, ordinances, regulations and customs and usages of Appellee County. (Complaint, para. 7). Appx036  In addition, Appellee Porter purported to act as an administrator and/or representative for Appellee County and, as such, was responsible for protecting the Appellant's interests and rights under § 302 of the Mental Health Procedures Act ("MHPA"), 50 Pa.C.S. § 302.  Moreover, the hospital Appellees

---

[1] Appellees County and Porter are collectively referred to as the "County Appellees."  Appellees UPMC, Western Psych and Doe are collectively referred to as the "Hospital Appellees."

were contracted with Appellee County to provide mental health treatment on behalf of Appellee County, including, but not limited to, emergency mental health treatment under the MHPA. (Complaint, para. 11; *See* Contract between UPMC/Western Psych and Allegheny County ("Contract")). Appx037, Appx109-Appx160

Appellant is diagnosed with bipolar disorder II, generalized anxiety disorder, and complex posttraumatic stress disorder, all of which are permanent mental health disabilities under the ADA. (Complaint paras. 14, 74). Appx037, Appx047 On or about August 27, 2023, Appellant's wife, with whom Appellant shared a home located in Appellee County, initiated an Application for Involuntary Emergency Examination and Treatment (hereinafter "application") through Appellee County. (*Id.*, paras. 15-16; *See* Application for Involuntary Emergency Examination and Treatment ("Application")). Appx037-Appx038, Appx095-Appx107 Appellant's wife made multiple false statements as the applicant in Part I of the Application, which requires the applicant to describe the reasons in which a person is severely mentally disabled and identify specific behaviors within the last thirty (30) days which supports the application. (Complaint, para. 17). Appx038 That same day, based solely on the Appellant's wife's false statements in Part I of the application, Appellee Porter completed Part III of the application and granted a warrant for the Appellant's emergency involuntary mental health treatment, pursuant to Section 302

of the MHPA. (*Id.*, para. 18). Appx038 Pursuant to §302(c) of the MHPA, "the county administrator or the director of the facility shall... take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure." (*Id.*, para. 21). Appx038

On August 27, 2023, at or about 12:00 p.m., law enforcement officers executed the aforementioned warrant signed by Appellee Porter, removed the Appellant from her home and property, and transported the Appellant to Appellee Western Psych's location for evaluation. (*Id.*, para. 22). Appx039 Pursuant to the aforementioned contract for the hospital Appellees to provide mental health services on behalf of Appellee County, including, but not limited to, emergency mental health treatment described in §302 of the MHPA, at all times relevant hereto, the hospital Defendants and Defendant Doe, were acting on behalf of Appellee County. (*Id.*, para. 23). Appx039 Appellee Porter, the hospital Appellees, and/or Appellee Doe, willfully and/or with gross negligence failed to complete Part IV of the Application, which required that Appellant be explained her rights, and/or Part V of the Application, which required that Appellant's personal property and the premises she occupies were secure. (*Id.*, para. 26). Appx039 Immediately following Appellant's removal from her home by law enforcement officers, Appellant's wife changed the locks of the home so that Appellant would be unable to return. Appellant's personal

property and pets remained inside the home. (*Id.*, para. 27). Appx039 Appellee Porter, the Hospital Appellees, and/or Appellee Doe willfully and/or with gross negligence took no steps to secure the Appellant's premises that she occupies, her home, pursuant to §302(c) of the MHPA and Part V of the Application. (*Id.*, para. 28). Appx040    Appellant believes that Appellee Porter, the Hospital Appellees, and/or Appellee Doe knew, or should have known, the Appellant's rights under §302 of the MPHA, including the Appellant's right to have her property and the premises that she occupies protected, and that the Appellees were deliberately indifferent to those rights. (*Id.*, para. 29). Appx040 Thereafter, Appellant was evaluated by a physician at Appellee Western Psych. That physician determined that Appellant was not in need of emergency involuntary mental health treatment. (*Id.*, para. 34). Appx041 At or about 5:00 p.m., on August 27, 2023, Appellant was discharged from Appellee Western Psych. (*Id.*, para. 35). Appx041 Thereafter, Appellant was unable to return to her locked home and was unable to retrieve her personal property. Appellant was also denied possession of her pets. (*Id.*, para. 36). Appx041

As a direct and proximate result of the willful and/or grossly negligent failures of the Appellees, and each of them, to protect Appellant's interest in her property and home, as described hereinbefore above, Appellant was deprived of her home and property for approximately one hundred and ninety-six (196) days. (*Id.*, para. 43). Appx042

In or about 2014, Appellee County's Controller, Chelsea Wagner ("Wagner"), published a Contract Compliance Procedures for Behavioral Health Crisis Services Applied to Contracts between the Allegheny County Department of Human Services and Western Psychiatric Institute and Clinic for the Period January 1, 2012, through June 30, 2013. That publication contained findings that "DHS Needs to Strengthen the Controls Surrounding the Documentation of the 302 process." (*Id.*, para. 40). Appx042 Appellant, therefore, believes that Appellee County was aware of deficiencies in the documentation of "the 302 process" and has not corrected the deficiencies which resulted in a violation of her rights, as described herein. (*Id.*, para. 41). Appx042 Appellant further believes that it was, and is, a pattern, practice, and/or custom that representatives of Appellee County fail to properly follow Section 302 of the MHPA and the requirements of its Application for Involuntary Emergency Examination and Treatment. (*Id.*, para. 42). Appx042

Appellant believes that the Appellees, and each of them, discriminated against her because of her disability, by depriving her of the aforementioned services provided in Parts IV and V of the Application. (*Id.*, para. 45). Appx042 Appellant believes that Appellee Porter, the hospital Appellees, and/or Appellee Doe knew, or should have known, the Appellant's rights under Section 302 of the MPHA, including the Appellant's right to have her property and the premises that she

occupies protected, and the Appellees were deliberately indifferent to those rights. (*Id.*, para. 46). Appx042

## B. Procedural History

In response to Appellant's Complaint, the Appellees filed motions to dismiss under Fed.R.Civ.P. 12(b)(6), requesting that the Lower Court dismiss each of Appellant's claims. (*See* Hospital Appellees' Motion to Dismiss; County Appellees' Motion to Dismiss). Appx050-Appx051, Appx168-Appx170 On February 14, 2024, Magistrate Judge Kezia O.L. Taylor ("Taylor") issued a Report and Recommendation regarding the motions to dismiss. (*See* Report and Recommendation). Appx003-Appx018 In her Report and Recommendation, Judge Taylor recommended that Appellees' motions to dismiss be granted and that Appellant's claims of violations of her rights pursuant to the Fourteenth Amendment to the United States Constitution, as well as the ADA, should be dismissed with prejudice. (*Id.*) Judge Taylor further found that Appellant should not have the opportunity to amend her Complaint, because any amendment would be futile. (*Id.*)

Appellant filed timely objections on February 28, 2025. On March 28, 2025, Lower Court District Judge Robert J. Colville ("Colville") accepted and adopted Judge Taylor's February 14, 2025, Report and Recommendation as the Opinion of the Court, with the modification that the Lower Court will permit leave for Appellant to amend her claims. (Order dated March 28, 2025 ("Order")). Appx019-Appx026

Judge Colville instructed that the only viable amendments Appellant could make, in light of the Lower Court's findings were: if she could allege that there were no allegations that she was a clear and present danger to herself, pursuant to the MHPA, she could amend her Fourteenth Amendment due process claim; and, if she could allege additional facts in good faith to support her pattern and practice claim, she could amend her ADA claim.[2]

Rather than amend pursuant to the aforementioned constraints set forth by the Lower Court, Appellant timely filed a Notice of Appeal on April 24, 2025, Appx001, regarding the Lower Court's March 28, 2025, Order.   Appx019 Thereafter, Plaintiff sought a final order of the Lower Court by notifying the Court that she is standing on her Complaint. (Notice dated April 25, 2025).  Appx239-240 Accordingly, on May 6, 2025, the Lower Court issued a final Order, dismissing Appellant's claims with prejudice.  Appx027  Appellant timely filed a Notice of Appeal regarding that Order on May 28, 2025.  Appx002

---

[2] Appellant argues that, in light of applicable precedent, she has pled sufficient facts regarding both her procedural due process and ADA claims, and, therefore, stands on her Complaint.

## SUMMARY OF THE ARGUMENT

In granting Appellees' motion to dismiss, the Lower Court repeatedly viewed the alleged facts in the light most favorable to the movants, or ignored well-pled facts altogether and, consequently, imposed a higher pleading standard than what has been well-established by this Court.

Appellant has properly pled that the Hospital Appellees are state actors by alleging such a close nexus between Appellee County and the challenged action that seemingly private behavior of the Hospital Appellees may be fairly treated as that of the State itself. Appellant has also sufficiently alleged a violation of her federally protected due process rights in that she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and that the procedures available to her did not provide due process of law. In addition, Appellant has set forth a violation of her ADA rights, as the facts pled demonstrate that she was plainly denied a service by the Appellee County because of her disability, and that she suffered intentional discrimination. Therefore, Appellant has pled the elements of her claims, sufficient to overcome the motions to dismiss filed by the Appellees.

Accordingly, this appeal follows.

ARGUMENT

**A. The Lower Court Erred in Finding the Hospital Appellees were Not State Actors.**

Federal courts are courts of limited jurisdiction "defined [within constitutional bounds] by federal statute." *Brizuela v. Highmark Blue Cross Blue Shield of Pa.*, 2023 U.S. Dist. LEXIS 66627, *5 (W.D. Pa. 2023) quoting *Badgerow v. Walters*, 142 S.Ct. 1310, 1315, 212 L. Ed. 2d 355 (2022). Federal question cases are those that arise under federal law. *Id.* citing 28 U.S.C. § 1331. "Typically, an action arises under federal law if that law 'creates the cause of action asserted.'" *Id.* quoting *Gunn v. Minton*, 568 U.S. 251, 257, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013).

To state a viable claim pursuant to 42 U.S.C. §1983, a plaintiff must plead "that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). "Anyone whose conduct is 'fairly attributed to the State' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383, 132 S. Ct. 1657, 182 L. Ed. 2d 662 (2012) citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

> Whether a private defendant is acting under color of state law depends on "whether there is 'such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) citing *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). To answer that question, the United States Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that

are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.*

*Brizuela*, 2023 U.S. Dist. LEXIS 66627, *6-7.

Under any test, "[t]he inquiry is fact-specific." *Kach*, 589 F.3d 626, 646,

quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see also*

*Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 234 (3d Cir. 2002) (*en banc*)

(noting that "the facts are crucial").

> In order to determine which test should be applied to a given set of facts, courts must carefully investigate the circumstances of each case. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001). The state action inquiry is "necessarily fact-bound," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939, "but any approach a court uses must remain focused on the heart of the state action inquiry," which is "to discern if the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Groman v. Township of Manalapan*, 47 F.3d 628, 639 n.17 (3d Cir. 1995).

*Schorr v. Borough of Lemoyne*, 265 F. Supp. 2d 488, 492 (M.D. Pa. May 30,

2003).

Judge Taylor found, "Plaintiff's Complaint simply does not put forth facts,

nor can it, indicative of any state action on the part of UPMC Defendants relative to

Plaintiff's short stay at [Western Psych]." (Report and Recommendation, p. 9).

Appx011  Although Judge Colville acknowledged that, "Courts in the Third Circuit

have found, in limited circumstances, that hospitals that contract with a county to treat involuntarily committed patients are state actors," he likewise found that Appellant failed to set forth facts that the Hospital Appellees are state actors. (Order, p. 4). Appx022

Judge Taylor also found that, "As correctly explained by UPMC Appellees, courts within our Circuit have consistently held that 'participation in the MHPA's involuntary commitment process does not constitute state action.'" (Report and Recommendation, p. 9). Appx011 Not only does this finding appear to disregard the Hospital Appellees' contractual obligation in the involuntary commitment process, it also references a portion of the Hospital Appellees' brief that cites cases which are not on point to the matter before the Court.

To that end, the Lower Court referenced the Hospital Appellees' citation of *Benn v. Universal Health Systems,* 371 F.3d 165 (3d Cir. 2004), to argue that they are not state actors for purposes of Appellant's §1983 claim. However, this matter is distinguishable from *Benn,* as well as the other cases cited in support of Appellees' argument. In *Benn,* the plaintiff alleged that the hospital defendants "...conducted a 'seriously defective evaluative process,' ...and that he did not meet the standard for emergency commitment under the MHPA." 371 F.3d at 172. The *Benn* Court found that the hospital defendants were not state actors for the purposes of plaintiff's §1983 due process claim, because they did not meet any of the factors present in the

enumerated state actor tests cited *supra*, including that there was no allegation of an "entwinement" between the state and private actors' conduct or of a "symbiotic relationship" between the state and private actors. (*Id.* at 173). Importantly, the Court in *Benn* did not consider a contractual relationship between a state actor and the private hospital defendants in rendering its decision. (*Id.*) ("In this case, there is no indication that the Horsham defendants made any profit from the petition to commit Benn, and there certainly is no evidence that the government received any tangible benefit from Horsham, save a possible increase in the general welfare.") Moreover, the cases cited by the Hospital Appellees in this matter involve the treatment rendered in the evaluation process, rather than failing to follow procedural due process requirements as Appellant is claiming here.

Accordingly, Appellant argued that the Court should consider the decision rendered in *Schorr*, which is more closely related to the facts before this Honorable Court, rather than any of the cases cited by the Hospital Appellees in the Lower Court. In *Schorr,* the District Court denied summary judgment and found that the medical defendants engaged in a state action due to a contract with the county to provide the involuntary commitment services at issue.

> Schorr's commitment was processed through the county-funded program pursuant to the contractual duty to provide the service. By virtue of this contractual relationship with the state, Holy Spirit is authorized and obligated to treat confined mentally disabled persons, such as Schorr. This Court concludes that they do so "clothed with the authority of state law." *See West v. Atkins*, 487 U.S. 42, 54-56, 101 L.

> Ed. 2d 40, 108 S. Ct. 2250 (1988). Therefore, for these reasons, this Court cannot find that there are no facts to support a finding that Holy Spirit was acting under color of state law under the close nexus test. Indeed, the evidence of record supports a finding that Holy Spirit was acting under color of state law.

265 F. Supp. 2d at 496. The Court reasoned, "...Plaintiffs are not alleging state action solely on the basis of a statutory scheme, but rather allege a complex relationship between the entities... this case 'falls between lines drawn in other jurisdictions.'" (*Id.*, at 495) (citations omitted).[3] Similarly, the Appellant here is not alleging state action on the behalf of the Hospital Appellees solely for their participation in the MHPA as a medical provider but, rather, due to their specific contract with Appellee County to render theses services, including the due process protections implemented by the Appellee County in the Application for Involuntary

---

[3]    Other district courts have found state action in the context of involuntary commitment where there was more significant interdependence or entwinement between the state and hospital or doctors than in the cases holding to the contrary. *See, e.g., Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 234 F. Supp. 2d 140, 165, (N.D. N.Y. 2002) (finding material issue of fact as to whether state action issue was satisfied under the compulsion test); *Tewksbury v. Dowling,* 169 F. Supp. 2d 103, 109 (E.D. N.Y. 2001) (finding that medical defendants acted jointly with state actors and the decision to commit was not made pursuant to "independent medical judgment"); *Moore v. Wyo. Med. Ctr.*, 825 F. Supp. 1531 (D. Wyo. 1993); *Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396 (N.D. N.Y. 1992) (finding state action where the defendant hospital had a contract with the county to provide the involuntary commitment services at issue).

*Schorr*, 265 F. Supp. 2d at 494-495.

Emergency Examination and Treatment. In any event, *Schorr*, as well as the cases cited in Footnote 3, *infra*, indicate that it is possible for a private hospital to be considered a state actor for purposes of Appellant's §1983 claim.

Here, Appellant specifically alleged that the Hospital Appellees were contracted with Appellee County to provide mental health treatment, including, but not limited to, emergency mental health treatment under §302 of the MHPA. Therefore, the Hospital Appellees, were acting on behalf of Appellee County. Upon the Appellant's arrival, the Hospital Appellees willfully failed to complete Part IV of the Application, which required that the Appellant be explained her rights, and/or Part V of the Application, which required that the Appellant's personal property and the premises she occupies were secure. The Hospital Appellees also willfully took no steps to secure the Appellant's premises that she occupies, her home, pursuant to §302(c) of the MHPA and Part V of the Application. However, the Lower Court found, "...the mere existence of a contractual relationship with the state is insufficient to find that a hospital is a state actor." (Order, p. 4). Appx022 As set forth above, Appellant did not simply allege the mere existence of a contractual relationship; but specific obligations, actions, and failures pursuant to their agreement. The Lower Court's aforementioned finding is further indicative of its failure to view the facts pled in the light most favorable to the Appellant.

As a direct and proximate result of the willful and/or grossly negligent failures of the Appellees, Appellant was deprived of her home and property for approximately one hundred and ninety-six (196) days. In addition, the Application specifically instructs that "Part V is to be completed by the County Administrator (or representative) or by the Director of the Facility (or representative) upon arrival of the patient at the facility." (*See* Application, pp. 7-14). Appx101-Appx107 Importantly, this instruction does not allow the option or discretion for the County Appellees or Hospital representatives to disregard this portion of the application.

Appellant attached to her Brief in Opposition to the Hospital Appellees' Motion to Dismiss the relevant portions of the multi-million-dollar agreement between the Hospital Appellees, defined as the "Service Provider," and Appellant County. (*See* Contract).[4] Appx109-Appx160 The agreement specifically states:

---

[4]    [I]n evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

*Chesher,* 2024 U.S. Dist. LEXIS 88175, at *9-10. Both Exhibits A and B to ECF No. 24, Appellant's Brief in Opposition to Hospital Appellees' Motion to Dismiss, are matters of public record, and, therefore, can be considered for purposes of a motion to dismiss. However, in the Report and Recommendation, Magistrate Judge Taylor wrote that, "…it is improper for Plaintiff to bring forth new facts in

SERVICE PROVIDER *shall* provide Crisis and Emergency services designed to stabilize the situation, promote the safety of all involved and relieve the urgent concern. Examples of services include but are not limited to: assessment and interventions intended to address the immediate individual, family or societal threat, or a condition of instability or danger, legal and court related services as required by the Mental Health procedures act, emergency transportation, telephone crisis services, walk in services, individual or team mobile crisis services, crisis residential services... Said services *shall* be provided in accordance with the Department of Human Services Contract Specifications Manual incorporated by reference in Exhibit D of the Agreement as well as all applicable local, state and federal laws, regulations and policies.

(Contract, p. 53) (Emphasis supplied). Appx160

Although the Hospital Appellees are an actual party to this contract, they disingenuously asserted to the Lower Court that, "...Defendants cannot determine the significance of this contract *to the extent that it exists*. Still, a *hypothetical contract* cannot impact the state action determination." (Hospital Appellees' Motion to Dismiss brief, p. 6) (Emphasis supplied). Appx059 Nevertheless, the Hospital Appellees rely on *Manley v. Augusty*, 2001 U.S. Dist. LEXIS 11516, (E.D. Pa. Aug. 9, 2001) to argue that, "[a] contract with the state to treat institutionalized mental patients or to carry out the mandates of the MHPA does not establish state action because the discretion inherent in the MPHA negates any assertion of state control

---

her response....," referring to Exhibit B, the contract between the Defendant County and the Hospital Defendants. (Report and Recommendation, p. 9). Appx011 However, a plain reading of Plaintiff's Complaint demonstrates that she pled the same facts shown in these exhibits.

over the process." (Hospital Appellees' Motion to Dismiss brief, p. 7).  Appx060 In *Manley*, the Court found, "[the medical defendant] is not therefore compelled to commit people under the MHPA, but is instead granted the discretionary power to do so depending on the determination of a physician.  Plaintiff's involuntary commitment under the MPHA was not a function compelled by or sufficiently connected to state directives to render the Clinic a 'state actor' for the purposes of § 1983." 2001 U.S. Dist. LEXIS 11516, *17.

Appellant agrees with the Hospital Appellees' assertion that medical treatment is not the exclusive prerogative of the state. (Hospital Appellees' Motion to Dismiss brief, p. 7). Appx060  However, the Appellees' conduct that Appellant alleges violated her rights had nothing to do with discretionary, medical decision-making provided to physicians under the MHPA and contemplated by the Court in *Manley*; but, rather, the Hospital Appellees' failure to protect Appellant's due process rights, a prerogative of the state.  The Hospital Appellees were compelled by state directives and law to complete the due process protections inherent in the application for involuntary commitment and did not have the option to disregard those protections.

Accordingly, Appellant has alleged such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself in that: (1) the Hospital Appellees have exercised powers that are

traditionally the exclusive prerogative of the state, *i.e.* to engage in due process protections to assure that while Appellant is detained that her personal property and the premises she occupies are secure; (2) that the Hospital Appellees acted in concert with state officials in this failure; and (3) that the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity, to wit, Appellee Porter and Appellee Doe were both obligated to engage in the aforementioned due process protections pursuant to the MHPA and both parties failed in this obligation, jointly.

Therefore, Appellant sufficiently alleged that the Hospital Appellees are state actors for the purposes of Appellant's §1983 claim and respectfully requests that this Honorable Court reverse the Lower Court's decision.

## B. The Lower Court Erred in Finding that Appellant had not Set Forth a Viable Procedural Due Process Claim.

In the Report and Recommendation, Judge Taylor wrote, "Assuming, *arguendo,* that the Court found state action on the part of UPMC Defendants, Plaintiff's due process claim would still fail as there is no federal constitutional right of which she was deprived." (Report and Recommendation, p. 10). Appx012 In this regard, Judge Taylor found that "...Plaintiff argues that UPMC Defendants violated her procedural due process rights by failing to comply with the MHPA." (*Id.*) For the same reason, Judge Taylor found that Appellant's due process claim against the County Appellees must also fail. (*Id.*, p. 11) ("...Plaintiff's theory of

liability against the County Defendants based upon their failure to comply with the MHPA fails as a matter of law."). Appx013  This assertion by the Court is not entirely accurate.  It is true that Appellant has alleged that the Appellees did not comply with the MHPA.  However, Appellant specifically alleged that it was the Appellees' failure to complete the application, which was adopted by the Appellee County to use to involuntarily commit individuals pursuant to the MHPA, which led to the specific procedural due process violation that she complains of here.  In other words, it is not the violation of the MHPA alone that forms the basis of Appellant's procedural due process claim, but, rather, the Appellees failure to follow its own process meant to afford Appellant due process protections.  Nevertheless, Judge Colville found, "…Judge Taylor properly dismissed Plaintiff's due process claim, based on allegations that Defendants failed to properly complete the application or comply with the MHPA."  (Order, p. 5).  Appx023

"At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) (internal citations omitted).  In order to properly assert a procedural due process claim under §1983, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life,

liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

The United States Supreme Court "...repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). The Lower Court seemingly disregarded any due process rights in the involuntary civil commitment process, contrary to the Supreme Court's acknowledgment in *Addington*. Judge Colville acknowledged an individual's due process rights in the involuntary civil commitment process, but only in regard to whether an individual be found to be a danger to herself, before she be involuntarily committed. (Order, p. 6). Appx024 Judge Colville further found that, "...Plaintiff's allegations center around violations of the MHPA and not violations of Plaintiff's due process rights as protected by the Fourteenth Amendment, such as by a violation of the above standard of proof." (*Id.*) In light of the facts pled by Appellant, the Lower Court's finding forecloses the possibility of any other due process right being implicated by the involuntary civil commitment process.

However, due process rights should not be limited to only one aspect of the involuntary civil commitment process, but rather interpreted holistically by the special relationship created by the government and the individual subject to that process. As aptly noted by the Supreme Court in *Addington,*

> … it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual. Whether we label this phenomena "stigma" or choose to call it something else is less important than that we recognize that it can occur and that it can have a very significant impact on the individual.

441 U.S. at 425-26. Certainly, the "very significant impact" on an individual acknowledged by the Supreme Court almost fifty (50) years ago could, and in this case did, implicate due process rights beyond whether there was a basis for the involuntary commitment. Moreover, the processes identified by the MHPA and the application are meant to protect Appellant's due process rights, as the 302 process creates an inherent risk to be weaponized for the purpose of removing someone from their home, involuntarily, rather than for its intended purpose of a mental health evaluation. If the employment of that process is deficient, as Appellant pled, she has, respectfully alleged a violation of her due process rights.

> Generally, the government has no affirmative duty under the Constitution to take action to assure that each citizen is able to exercise, enjoy, or realize the benefits of a particular right. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). However, exceptions to the *DeShaney* rule exist when the State has placed sufficient restraints on a person's liberty to create a "special relationship" with the individual. A substantive due process right arises out of the affirmative duties created by that special relationship.

*Harris v. Lehigh County Office of Children & Youth Servs.*, 418 F. Supp. 2d 643, 647 (E.D. Pa. June 16, 2005). This special relationship is seemingly acknowledged in the MHPA by the remedial process identified therein to protect the liberty and

property interests of individuals involuntarily committed. Pursuant to Section 302(c) of the MHPA, "the county administrator or the director of the facility shall… take reasonable steps to assure that while the person is detained, the health and safety needs of any of his dependents are met, and that his personal property and the premises he occupies are secure." Part V of the Application to involuntarily commit Appellant pursuant to §302 of the MHPA, which required that a county or hospital representative take steps to secure Appellant's personal property and the premises she occupies, included a designated space for the county or hospital representative to include steps taken to secure Appellant's personal property. However, each individual responsible for completing this section of the application, specifically meant to protect Appellant's due process rights, simply left this portion of the application blank. In fact, no steps were taken by any of the Appellees to protect Appellant's due process interests implicated by her involuntary civil commitment.

Moreover, it is the disregard of this process meant to protect Appellant's, and others', due process rights that gives   rise to her procedural due process claim here. Importantly, Appellant pled that the Appellee County specifically found that "DHS Needs to Strengthen the Controls Surrounding the Documentation of the 302 process." Appellant, therefore, pled that Appellee County was aware of deficiencies in the documentation of "the 302 process" and has not corrected the deficiencies which resulted in a violation of her due process rights. In fact, the process here was

so deficient that multiple individuals, who were required by law to take steps to protect Appellant's property interest, willfully disregarded that obligation, while fulfilling all of their other obligations pursuant to the MHPA and the Application.

In addition, the finding by the Lower Court that non-compliance with a state law, the MHPA here, cannot give rise to a procedural due process claim does not comport with Third Circuit precedent. In *Studli v. Children & Youth & Families Cent. Reg'l Office,* 346 F. App'x 804, 813 (3d Cir. 2009), this Honorable Court analyzed a plaintiff's procedural due process claim regarding state actors' compliance with Pennsylvania statutory procedure. In upholding the dismissal of plaintiff's procedural due process claim, this Court found,

> Studli does not assert that CYS violated the applicable Pennsylvania statutes or that those statutes are not adequate to protect her Fourteenth Amendment procedural interests. Accordingly, Studli's procedural due process claim was properly dismissed, because CYS followed Pennsylvania statutory procedure, and Studli does not argue such procedures failed to protect her procedural due process rights.

(*Id.*) Here, Appellant alleged both that the Appellees violated Pennsylvania statutes by not following statutory procedure, and that the procedure, *i.e.* the application, failed to protect her procedural due process rights.

Therefore, Appellant has sufficiently alleged that she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and that the procedures available to her did

not provide due process of law. Accordingly, Appellant respectfully requests that this Honorable Court reverse the Lower Court's decision.

## C. The Lower Court Erred in Dismissing Appellant's ADA Claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. In order to establish a *prima facie* case of disability discrimination under Title II of the ADA, a plaintiff must allege that: (1) he or she is a qualified individual with a disability within the meaning of the statute; (2) he or she is being excluded from participation in, or are being denied the benefits of the services, programs, or activities of a covered entity, or are otherwise being discriminated against by the entity; and (3) such exclusion, denial of benefits, or discrimination is due to the plaintiff's disability. *Cornell Cos. v. Borough of New Morgan,* 512 F. Supp. 2d 238, 262 (E.D. Pa., May, 2007).

Pursuant to the ADA, the "term 'disability' means . . . [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Pritchett v. Ellers,* 324 Fed. Appx. 157, 159 (3d Cir. 2009). "Congress directed courts to interpret the term 'disability' broadly 'to the maximum extent permitted by the terms of this chapter.'" *Diamond v. Univ. of Pittsburgh Med. Ctr.,* 2024 U.S. Dist. LEXIS 66274, *9-10 (W.D. Pa., April, 2024) quoting *Ostrowski v.*

*Con-Way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013) quoting 42 U.S.C. § 12102(4)(A)); *see also* 28 C.F.R. § 36.101(b) ("The question of whether an individual meets the definition of 'disability' under this part should not demand extensive analysis."); 29 C.F.R. § 1630.1(c)(4) (same). "At the motion-to-dismiss stage, a plaintiff need not 'go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations.'" *Diamond.*, 2024 U.S. Dist. LEXIS 66274, *10 quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

> In addition, the Third Circuit has held,

> We accept that thinking is a major life activity. We have previously observed that "the ADA does not define 'major life activities,'" but despite the comparative lack of guidance in the statute, we conclude that it is reasonable to include thinking as a major life activity. We hardly need to point out that thinking is inescapably central to anyone's life. Perhaps the activity is rather broad, but given the difficulty of specifying the different constituents of thinking or otherwise narrowing this central activity (especially when discussing the effects of psychosis or its subclinical manifestations), we will not try to constrict [Plaintiff's] arguments about how her condition affects her ability to think. We think that most objections about the broadness of thinking as a life activity can be captured in the analysis of when the activity is substantially limited.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999). Here, Appellant pled that she suffers from bipolar disorder II, generalized anxiety and complex posttraumatic stress disorder, which are permanent mental health disabilities under the ADA.

The scope of "services, programs, and activities" has been broadly construed.

*Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 277 (3d Cir. 2020).

> Section 504 of the RA defines a "program or activity" quite broadly to include "all of the operations of" a state instrumentality. We have confirmed these terms' broad meaning, calling them "all-encompassing." The ADA does not define "services, programs, or activities," but both Congress and this Court have recognized that Title II provides at least the same degree of protection as Section 504. Thus, the phrase "service, program, or activity" under Title II, like "program or activity" under Section 504, is "extremely broad in scope and includes anything a public entity does."

*Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

In *Furgess*, this Court analyzed whether a prison's failure to provide a disabled inmate a shower constituted a denial of a service, program or activity. *Id.* "A prison's provision of showers to inmates fits within this expansive definition, as it undoubtedly is something 'a public entity does' and is one 'of the operations' of the prison." *Id.* Here, completing Parts IV and V of the application is something that the Appellee County does and is part of its operation in administering the 302 process, and the Appellee County failed to offer this service to Appellant. Appellant has alleged that the sole cause of Appellees' failure was because of her disability.

Appellant further pled that she was intentionally discriminated against, as the Appellees were deliberately indifferent to her protected rights. (*Id.*, at 292) (holding that intentional discrimination can be satisfied by a showing of deliberate indifference). In order to prove deliberate indifference, a plaintiff must show that

the defendant had knowledge that a federally protected right is substantially likely to be violated and that the defendant failed to act despite that knowledge. *Id.* Accordingly, Appellant pled that the Appellees were aware of Appellant's ADA rights, by way of the MHPA and the application, but failed to act despite that knowledge.

Nevertheless, Judge Taylor found that Appellant's ADA claim must fail, "…because there are no facts to suggest that she was denied services based on her disability." (Report and Recommendation, p. 15). Appx018 Likewise, Judge Colville agreed with Judge Taylor and found, "Plaintiff has not adduced sufficient facts to demonstrate that, but for her disability, Allegheny County would not have denied her services." (Order, p. 7). Appx025 However, Appellant clearly pled that she suffers from permanent mental health disabilities under the ADA; and that the County Appellees discriminated against her because of her disability by depriving her of the aforementioned services provided in Parts IV and V of the 302 Application. Therefore, the Lower Court's aforementioned findings indicate that it did not analyze the facts pled in the light most favorable to Appellant, and, instead, held her to a higher pleading standard than what is required by this Honorable Court.

In following the applicable standard, the facts pled by Appellant demonstrate that she was plainly denied a service by the Appellee County because of her

disability, and that she suffered intentional discrimination. Accordingly, Appellant respectfully requests that this Honorable Court reverse the Lower Court's decision.

## D. The Lower Court Erred in Dismissing Appellant's Municipal Liability Claim.

The Lower Court found that Appellant's municipal liability claim must fail, because Appellant has not pled any constitutional violation. (Order, p. 7). Appx025 For the reasons argued herein, Appellant has pled a viable claim of a violation of her due process rights pursuant to the Fourteenth Amendment and 42 U.S.C. §1983.[5]

Accordingly, Appellant respectfully requests that this Honorable Court reverse the Lower Court's decision.

## CONCLUSION

For all of the above reasons, Appellant respectfully requests that this Court reverse the Lower Court's ruling granting Appellees' motions to dismiss and reinstate the Appellant's claims.

---

[5] Appellant respectfully suggests that she has pled a viable municipal liability claim. (*See* Complaint, paras. 40-42, 63-70). Appx041-042, Appx046

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

/s/Elizabeth A. Tuttle
Elizabeth A. Tuttle, Esquire
etuttle@joelsansonelaw.com
PA ID No. 322888
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165
*Counsel for Appellant*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

## CERTIFICATE OF COUNSEL

I hereby certify as follows:

1.     That I am a member of the bar of this Court.

2.     That the text of the electronic version of this brief is identical to the text of the paper copies.

3.     That the following virus protection detection program, McAfee, was run on the file and no virus was detected.

4.     That this brief contains 7722 words within the meaning of Fed.R.App.Proc. 32(a)(7)(B).  In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

<div style="margin-left:40%">

/s/Elizabeth A. Tuttle
Elizabeth A. Tuttle, Esquire
etuttle@joelsansonelaw.com
PA ID No. 322888
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194
*Counsel for Appellant/Plaintiff*

</div>

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 25-1775/No. 25-2036

SUSAN KERR,

Plaintiffs, Appellants,

v.

ALLEGHENY COUNTY, JACOB PORTER, UNIVERSITY OF PITTSBURGH
MEDICAL CENTER (UPMC) and WESTERN PSYCHIATRIC INSTITUTE
AND CLINIC,

Defendants, Appellees.

JOINT APPENDIX - VOLUME I

On Appeal from the Court's Orders in the United States District Court for
the Western District of Pennsylvania, Civil Action No. 2:24-cv-0805, dated
March 28, 2025 and May 6, 2025, and Report and Recommendation dated
February 14, 2025, granting motions to dismiss.

COUNSEL FOR APPELLANT

Elizabeth A. Tuttle, Esquire
LAW OFFICES OF JOEL SANSONE
Two Gateway Center, Suite 1290
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  August 18, 2025

Appx00018-Appx0415

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN KERR, | ) | |
| | ) | CIVIL ACTION NO. 2:24-cv-0805 |
| Plaintiff, | ) | |
| | ) | HONORABLE ROBERT J. COLVILLE |
| v. | ) | HONORABLE KEZIA O. L. TAYLOR |
| | ) | |
| ALLEGHENY COUNTY, | ) | |
| JACOB PORTER, | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| MEDICAL CENTER (UPMC), | ) | |
| a Pennsylvania non-profit corporation, | ) | |
| WESTERN PSYCHIATRIC INSTITUTE | ) | |
| and CLINIC, a division of UPMC, and | ) | |
| JOHN/JANE DOE, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | Electronically Filed. |

NOTICE OF APPEAL

Please take notice that Plaintiff hereby appeals the Order of Court dated

March 28, 2025, adopting the Report and Recommendation dated February 14, 2025, and

thereby granting Defendants' Motions to Dismiss.

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Massimo A. Terzigni
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165
*Counsel for Plaintiff*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: April 22, 2025

Appx001

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN KERR, | ) | CIVIL ACTION NO. 2:24-cv-0805 |
| Plaintiff, | ) | |
| | ) | HONORABLE ROBERT J. COLVILLE |
| v. | ) | HONORABLE KEZIA O. L. TAYLOR |
| | ) | |
| ALLEGHENY COUNTY, | ) | |
| JACOB PORTER, | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| MEDICAL CENTER (UPMC), | ) | |
| a Pennsylvania non-profit corporation, | ) | |
| WESTERN PSYCHIATRIC INSTITUTE | ) | |
| and CLINIC, a division of UPMC, and | ) | |
| JOHN/JANE DOE, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | Electronically Filed. |

NOTICE OF APPEAL

Please take notice that Plaintiff hereby appeals the Order of Court dated

May 6, 2025, dismissing the case with prejudice.

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Massimo A. Terzigni
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165
*Counsel for Plaintiff*

Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  May 28, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN KERR, | ) | |
| | ) | Civil Action No. 24-00805 |
| Plaintiff, | ) | |
| | ) | District Judge Robert J. Colville |
| v. | ) | Magistrate Judge Kezia O. L. Taylor |
| | ) | |
| ALLEGHENY COUNTY, et al., | ) | ECF No. 10 |
| | ) | ECF No. 26 |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I.   RECOMMENDATION

It is respectfully recommended that both Motions to Dismiss, ECF Nos. 10 and 16, be GRANTED. It is further recommended that Plaintiff's Complaint be dismissed, with prejudice, as any amendment would be futile.

## II.   REPORT

### A.  Procedural History

Plaintiff Susan Kerr ("Plaintiff") filed her counseled civil rights complaint on June 4, 2024. ECF No. 1. As Defendants, Plaintiff names Allegheny County and Jacob Porter ("County Defendants"), and University of Pittsburgh Medical Center, Western Psychiatric Institute and Clinic ("WPIC"), and John/Jane Doe ("UPMC Defendants"). *Id.* On August 12, 2024, UPMC Defendants filed their Motion to Dismiss. ECF No. 10. On September 18, 2024, Plaintiff filed her response in opposition thereto. ECF No. 24. On September 25, 2024, UPMC Defendants filed their Reply. ECF No. 25. On September 27, 2024, County Defendants filed their Motion to Dismiss, and Plaintiff filed her response in opposition thereto on October 24, 2024. ECF Nos. 26, 28. Defendants' Motions to Dismiss are now ripe for review.

**B. Factual Allegations**

The events giving rise to Plaintiff's lawsuit resulted from a tumultuous marital relationship between Plaintiff and her spouse, who is not a defendant in this action, but with whom Plaintiff shared a home. ECF No. 1, *generally*. At all relevant times, Plaintiff was diagnosed with bipolar disorder II, generalized anxiety, and complex post-traumatic stress disorder. *Id.* ¶ 14. On August 27, 2023, Plaintiff's wife submitted an Application for Involuntary Emergency Examination and Treatment ("Application"), wherein she described Plaintiff's erratic behavior, including threats of self-harm. ECF No. 28-1 at 4. The Application is comprised of five parts: Part I is completed by the person who believes that another individual requires treatment. *Id.* at 3-5; Part II is to be completed if an individual is being taken to a facility without a warrant. *Id.* at 6; Part III is completed by the County Administrator (Defendant Porter, in the instant case) and is the Warrant that is used to transport the individual requiring treatment to a facility (WPIC, in the instant case). *Id.* at 7; Part IV is to be completed by a person who provides an explanation of the Patient Rights to the individual who is brought in for treatment. *Id.*; Part V is to be completed by a physician, police officer, county administrator, or representative, describing the steps taken "to assure that while the patient is detained the health and safety needs any of any (sic) his/her dependents are met and that his/her property and premises he/she occupies are secure." *Id.* at 8; and Part VI is completed by the examining physician who describes the findings of the examination and indicates any treatment that may be needed. *Id.* at 9. In addition to alleging that her spouse provided false statements in Part I, ECF No. 1 ¶ 17, Plaintiff also avers that all Defendants failed to complete Sections IV and V of the application. *Id.* ¶¶ 24, 26, 33, 44.

Next, Plaintiff asserts that "[i]mmediately following the Plaintiff's removal from her home by law enforcement officers, Plaintiff's wife changed the locks of the home so that the Plaintiff

would be unable to return. Plaintiff's personal property and pets remained inside the home." *Id.* ¶ 27. Plaintiff asserts that at some point after she arrived at WPIC, an employee spoke with her wife on the phone who advised the staff member "that she had changed the locks of their shared home and that she did not want the Plaintiff to return to the home." *Id.* ¶ 31. Plaintiff was not made aware of this conversation. *Id.* ¶ 32. Plaintiff was evaluated by a physician who determined that she was not in need of emergency involuntary treatment. *Id.* ¶ 34; ECF No. 28-1 at 9. Plaintiff was discharged from WPIC at approximately 5:00 p.m. but was locked out of her house and could not retrieve her personal property or access her pets. ECF No. 1 ¶¶ 35, 36. Plaintiff avers that she got some of her personal property on September 9, 2023, but was not able to see her pets until December 2023, and it was not until March 2024 when she was able to return to her home, get her property and her pets. *Id.* ¶¶ 37, 38.

In Count I, Plaintiff brings a Section 1983 due process claim against all Defendants. In Count II, Plaintiff brings a *Monell* claim against County Defendant Allegheny County, and in Count III, Plaintiff brings a discrimination claim under the Americans with Disability Act, 42 U.S.C. § 12131, *et seq.*, against Hospital Defendants UPMC and WPIC and County Defendant Allegheny County. Plaintiff requests monetary damages and injunctive relief. *Id.* ¶¶ 50-81.

### C. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the court must view the factual allegations contained in the pleading at issue as true, the court is "not compelled to accept unwarranted inferences, unsupported

4

conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d

187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit

has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must
> plead to state a claim." Second, the court should identify allegations
> that, "because they are no more than conclusions, are not entitled to
> the assumption of truth." Finally, "where there are well-pleaded
> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for
> relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster*

*Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

U.S. at 679.

 Finally, the Court recognizes that in a civil rights action, when dismissing a case for failure

to state a claim, a court must give the plaintiff an opportunity to amend a deficient complaint,

regardless of whether the plaintiff requests to do so, unless amendment would be inequitable or

futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir.

2007).

 **D. Discussion**

  **1. Count I – Section 1983 Due Process Claim**

 Plaintiff seeks to hold all Defendants liable pursuant to Section 1983 for violating her due

process rights when they failed to complete Sections IV and V of the Application, and "therefore,

failed to take reasonable steps to assure that while Plaintiff was detained, the health and safety

needs of Plaintiff's personal property and the premises she occupies were secure. As a result of

that specific deprivation, Plaintiff's wife changed the locks of the Plaintiff's home, and the Plaintiff

was unable to return to her home and her property."[1]  ECF No. 1 ¶¶ 51-53; ECF No. 28 at 8 and 9.  UPMC Defendants argue that they cannot be held liable because none of these Defendants is a "state actor."  ECF No. 11 at 4.  County Defendants submit that to the extent Plaintiff suffered a deprivation of her constitutional rights, the same was caused by her wife, a non-party, and not committed by any of them.  ECF No. 27 at 3-5.  The Court will address each argument, in turn.

### i.  UPMC Defendants

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must plead that he/she was "deprived of a federal constitutional or statutory right by a state actor."  *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983); *see also Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169–70 (3d Cir. 2004).  Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (*en banc*) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).  As the Third Circuit has explained, "[t]he color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Bates v. Paul Kimball Hosp.*, 346 F. App'x 883, 887 (3d Cir. 2009) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)).

---

[1] The Court notes that Plaintiff's wife is not a party to this case.

Appx008

Here, Plaintiff's Section 1983 claim against UPMC Defendants fails as a matter of law because none of the UPMC Defendants is a state actor. The United States Supreme Court has observed that "state action may be found if, though only if, there is such a "close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). In *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009), the Third Circuit Court of Appeals outlined the following three tests under which a private party may be deemed a state actor. *Id.* The Public Functions Test looks at "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *Id.* The State Compulsion Test analyzes "whether the private party has acted with the help of or in concert with state officials." *Id.* The third test, known as the Joint Action or Close Nexus Test, assesses whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* The Court finds that Plaintiff's Complaint fails to allege facts sufficient to find UPMC Defendants to have been state actors under any of the above tests.

Plaintiff fails to specifically identify which of the aforementioned tests she is relying upon; however, in support of her argument that UPMC Defendants are state actors, she appears to be focusing on the third, Joint Action or Close Nexus Test. In support of her position, Plaintiff relies on *Schorr v. Borough of Lemoyne*, 265 F. Supp. 2d 488 (M.D. Pa. May 30, 2003), where, on summary judgment, the Court found state action on the part of a traditionally private hospital based on its contractual relationship with the County. *Id.* at 496. In support of its conclusion, the Court relied on the following factors: "[t]he two entities have financial interdependence through the various county contracts; Holy Spirit had an obligation under the contract to provide the

7

commitment services and design the policies complained of; and county officials had regular involvement and oversight of Holy Spirit's programs. *Id.* at 495. Specifically, the evidence in that case revealed that the contract between Holy Spirit Hospital and the County obligated the Hospital "to provide crisis intervention services that are mandated to the county by statute . . . require[d] a County delegate to handle all section 302 commitments . . . [and] required Holy Spirit to maintain a patient grievance procedure and the County reviews the grievances." *Id.* (internal citations to the record omitted). The record in that case also revealed that "there is daily involvement and oversight of the county such that it has influence over the policies of the Crisis Intervention program at Holy Spirit." *Id.* In finding state action on the part of the Hospital, the Court concluded that "[b]y virtue of this contractual relationship with the state, Holy Spirit is authorized and obligated to treat confined mentally disabled persons, such as Schorr." *Id.* at 496.

Here, in support of her argument that UPMC Defendants are state actors, "Plaintiff specifically alleged that, at all times relevant to her Complaint, the hospital Defendants were contracted with Defendant County to provide mental health treatment on behalf of Defendant County, including, but not limited to, emergency mental health treatment under §302 the MHPA." ECF No. 24 at 10. She concludes that based on the existence of this contract, "at all times relevant hereto, the hospital Defendants and Defendant Doe, were acting on behalf of Defendant County." *Id.* Plaintiff has failed to allege sufficient facts upon which it can reasonably be inferred that the UPMC Defendants were state actors. *See Cmty. Med. Ctr. v. Emergency Med. Servs.*, 712 F.2d 878, 881 (3d Cir. 1983) (explaining that a close nexus "cannot be inferred from the private party's participation in public contracts."); *see also Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) ("a private corporation is not a public entity merely because it contracts with a public entity to provide some service.").

8

In her Brief in Opposition, Plaintiff, for the first time, attaches what she describes as "relevant portions of the multi-million-dollar agreement between the hospital Defendants, defined as the "Service Provider," and Defendant County," to further bolster her argument that UPMC Defendants were state actors at all times relevant to her lawsuit. ECF No. 24 at 11 and 12. While it is improper for Plaintiff to bring forth new facts in her response, *see Bos. v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018) ("Boston may not assert new claims or rely on new facts in response to a motion to dismiss."), even if the Court were to consider the cited terms of the agreement, the outcome would still be in favor of UPMC Defendants. Plaintiff's Complaint simply does not put forth facts, nor can it, indicative of any state action on the part of UPMC Defendants relative to Plaintiff's short stay at WPIC.

Plaintiff appears to present another theory under which UPMC Defendants may be viewed as "state actors" for purposes of a Section 1983 claim. While Plaintiff concedes that "medical treatment is not the exclusive prerogative of the state," ECF No. 24 at 12, she argues that the violation of her due process rights, at the hands of UPMC Defendants, is. *Id.* at 13. "In other words, the hospital Defendants were compelled by state directives and law to complete the due process protections inherent in the application for involuntary commitment and did not have the option to disregard those protections." *Id.* This argument fares no better because the United States Supreme Court has held that "private misuse of a state statute does not describe conduct that can be attributed to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). As correctly explained by UPMC Defendants, courts within our Circuit have consistently held that "participation in the MHPA's involuntary commitment process does not constitute state action." ECF No. 11 at 5. Accordingly, UPMC Defendants are not state actors for purposes of Plaintiff's Sections 1983 claim.

9

Appx011

Assuming, *arguendo*, that the Court found state action on the part of UPMC Defendants, Plaintiff's due process claim would still fail as there is no federal constitutional right of which she was deprived. In her response to the Motion, Plaintiff specifically dismisses the medical aspect of her commitment as being violative of her rights; instead, she explains that "the hospital Defendants were compelled by state directives and law to complete the due process protections inherent in the application for involuntary commitment and did not have the option to disregard those protections." ECF No. 24 at 13. In other words, Plaintiff argues that UPMC Defendants violated her procedural due process rights by failing to comply with the MHPA. It is well-established that Section 1983 does not provide a cause of action for violations of state statutes. *See Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) ("Section 1983 does not provide a cause of action for violations of state statutes, and[,] . . . a state statute cannot, in and of itself, create a constitutional right.) For example, in *Spencer v. Kreisher*, 2009 WL 111566 (M.D. Pa. Jan. 15, 2009), the plaintiff's wife filed an application for involuntary emergency examination and treatment pursuant to the MHPA. *Id.* at *2. Her application was accepted by the County Administrator, who, based exclusively on the wife's narrative, issued a warrant for the plaintiff to be taken to a facility for examination and treatment, resulting in him being committed for five days. *Id.* In support of his Section 1983 due process claim, the plaintiff argued that the County Administrator erred in finding that his wife's narrative in the application for involuntary commitment contained clear and convincing evidence to support the issuance of a warrant. *Id.* at *3. In granting Defendants' Motion to Dismiss, the Court wrote that "[i]n other words, [the plaintiff] argues that defendants violated procedural due process by failing to comply with the MHPA. Section 1983 does not provide a cause of action for violations of state statutes. *See Benn*, 371 F.3d at 174." *Id.*

Appx012

Accordingly, it is respectfully recommended that Plaintiff's due process claims against

UPMC Defendants be dismissed, with prejudice. In light of this recommendation, the Court need

not address UPMC Defendants' qualified immunity argument.

### ii. County Defendants

In her Complaint, Plaintiff alleges that the County Defendants violated her due process

rights because they "willfully and/or with gross negligence failed to complete Part IV and Part V

of the application, pursuant to the MHPA." ECF No. 1 ¶ 53. In her Brief in Opposition to County

Defendants' Motion to Dismiss, she elaborates on this claim by alleging:

> Defendant Porter, and the other responsible named Defendants,
> willfully and/or with gross negligence failed to follow the procedure
> for an emergency examination and treatment in that they did not
> complete Part IV and Part V of the application and, therefore, failed
> to take reasonable steps to assure that while Plaintiff was detained,
> the health and safety needs of Plaintiff's personal property and the
> premises she occupies were secure. As a result of that specific
> deprivation, Plaintiff's wife changed the locks of the Plaintiff's
> home, and the Plaintiff was unable to return to her home and her
> property.

ECF No. 28 at 8 and 9. Later in her Brief, Plaintiff asserts that Part V of the Application which is

"specifically meant to protect Plaintiff's due process rights[,]" was left blank by Defendants, and

"it is the Defendants' conduct in disregarding this process meant to protect Plaintiff's due process

rights that give rise to her procedural due process claim here." *Id.* at 10 and 11.

As discussed *supra*, Plaintiff is unable to maintain a Section 1983 claim predicated on a

violation of a state statute, including failure to adhere to procedural requirements set forth therein.

Accordingly, Plaintiff's theory of liability against the County Defendants based upon their failure

to comply with the MHPA fails as a matter of law. *See Spencer*, 2009 WL 111566. It is therefore

respectfully recommended that Plaintiff's Section 1983 claim asserted against County Defendants

11

be dismissed, with prejudice. In light of this recommendation, the Court need not address County Defendants' remaining arguments, including qualified immunity.

### Count II – Section 1983 Municipal Liability

Plaintiff brings a municipal liability claim against Defendant Allegheny County, arguing that "Defendant County failed to properly train Defendant Porter on the proper procedure in completing the application, and specifically Part IV and Part V of the application . . . ." ECF No. 1 ¶ 66. In their Motion to Dismiss, County Defendants do not separately address this claim; however, they nevertheless seek dismissal of Count II based on Plaintiff's failure to state a Section 1983 claim. *See* ECF No. 27 at 3-7.

A municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978).

As the Third Circuit observed,

> [a] municipality "cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. But a municipality can be held liable when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694; *see also Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 175 (3d Cir. 2017), *as amended* (Sept. 22, 2017) (plaintiff must show that "implementation of a municipal policy or custom, causes a constitutional violation."). Accordingly, the Court must analyze "whether plaintiff's harm was caused by a constitutional violation" and whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).

*Bhatnagar v. Meyer*, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023). Our Court recently explained that " . . . regardless of who the Defendant is or in what capacity they are being sued, there can be no § 1983 liability without an underlying constitutional violation." *Kehl v. Allegheny*

12

Appx014

*Cnty.*, No. 2:24-CV-00060-CCW, 2024 WL 5166776, at \*4 (W.D. Pa. Dec. 19, 2024) (Wiegand, J.) (internal citations omitted).

Given the recommendation to dismiss Plaintiff's Section 1983 claims against all of the Defendants, this Court has determined there has not been a constitutional violation pled in this case. As such, without an underlying constitutional violation, Plaintiff's municipal liability claim at Count II fails as a matter of law, and it is respectfully recommended that Count II of Plaintiff's Complaint be dismissed, with prejudice.

### Count III – Americans with Disability Claim

In Count III, Plaintiff alleges that both UPMC and County Defendants, with the exception of the individual County Defendant Porter, violated her rights under the Americans with Disability Act, 42 U.S.C. § 12131, et seq., ("ADA") because they discriminated against her for her disability (i.e., "bipolar disorder II, generalized anxiety and complex post-traumatic stress disorder"), by failing to complete Parts IV and V of the Application. ECF No. 1 ¶¶ 14, 76.

County Defendants argue that Plaintiff has failed to state a claim under the ADA because her Complaint is devoid of facts demonstrating the necessary causal connection between her disability and the purported deprivation. ECF No. 27 at 11 and 12. UPMC Defendants submit that Plaintiff's ADA claim fails at the outset because neither of the two entities is a "public entity" as defined by the statute, nor does either entity provide "public services." ECF No. 11 at 15. Both sets of Defendants argue that Plaintiff's ADA claim fails because "Plaintiff makes the contradictory claim that Defendants' actions were caused by a discriminatory animus while also claiming that these same actions have been a persistent issue for all patients." ECF No. 11 at 16; ECF No. 27 at 13.

13

Appx015

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute defines a public entity as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. "[T]he ADA's 'by reason of' language requires a showing of causation: the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks." *Muhammad v. Ct. of Common Pleas of Allegheny Cnty., Pa.*, 483 F. App'x 759, 764 (3d Cir. 2012)

Initially, Neither UPMC nor WPIC is a public entity as contemplated by the ADA. In a recent case where UPMC was a Defendant in an ADA claim, Chief Magistrate Judge Lanzillo explained that:

> UPMC as a defendant . . . runs afoul of the well-established proposition that a private corporation does not become a public entity amenable to suit under Title II of the ADA and § 504 of the RA "merely because it contracts with a public entity to provide some service." *Matthews v. Pennsylvania Department of Corrections*, 613 Fed. Appx. 163, 170 (3d Cir. 2015) (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)). *See also Schiavone*, 2022 WL 3142615, at *7 (dismissing ADA and RA claims against the private corporations contracted to provide medical services to inmates at the Luzerne County Correctional Facility); *Keifer v. PrimeCare Medical, Inc.*, 2017 WL 3142279, at *3 (E.D. Pa. July 24, 2017) (dismissing ADA claim against health care provider after finding "no basis for concluding that ... a private entity contracting to provide health care services to a number of prisons, including Lancaster County Prison in the Commonwealth of Pennsylvania, is an instrumentality of the state or otherwise a public entity.").

*Happel v. Bishop*, No. 1:23-CV-13-SPB-RAL, 2024 WL 1508561, at *4 (W.D. Pa. Feb. 22, 2024),

*report and recommendation adopted*, No. CV 23-13, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024).

Appx016

Setting aside the issue of whether UPMC and WPIC are "public entities" for purposes of an ADA claim, Plaintiff's ADA claim would nevertheless fail against all Defendants because there are no facts to suggest that she was denied services based on her disability. Plaintiff alleges that Allegheny County and UPMC Defendants "discriminated against her because of her disability, by depriving her of . . . services provided in Parts IV and V of the application." ECF No. 1 ¶ 76. Notably, Plaintiff asserts in her Complaint that a 2014 study put County Defendants on notice of deficiencies related to completing necessary paperwork related to "the 302 process." ECF No. 1 ¶¶ 40 and 41. These averments alone are enough to dismiss Plaintiff's ADA claim as she admits that failing to complete necessary paperwork impacted many other individuals who were involved in the "302 process." Furthermore, in response to UPMC Defendants' Motion to Dismiss, Plaintiff states that "the involuntary commitment process under §302 of the MHPA is unique to individuals experiencing a mental health crisis or suffering from mental health disabilities." ECF No. 24 at 21. As such, to the extent Plaintiff was denied any services, her unique disability was certainly not the cause – let alone the "but for cause" – for this alleged discrimination.

Accordingly, it is respectfully recommended that Plaintiff's ADA claim be dismissed, with prejudice.

### III.    CONCLUSION

It is respectfully recommended that UPMC Defendants' Motion to Dismiss at ECF No. 10 and County Defendants' Motion to Dismiss at ECF No. 16, be GRANTED. It is further recommended that Plaintiff's Complaint be dismissed, with prejudice, as any amendment would be futile

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the

15

date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.


Dated: February 14, 2025.

s/ Kezia O. L. Taylor____
Kezia O. L. Taylor
United States Magistrate Judge

16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN KERR, | ) |
| | ) |
| Plaintiff, | ) No. 2:24-cv-00805-RJC-KT |
| | ) |
| v. | ) |
| | ) District Judge Robert J. Colville |
| ALLEGHENY COUNTY, JACOB | ) |
| PORTER, UNIVERSITY OF PITTSBURGH | ) Magistrate Judge Kezia O. L. Taylor |
| MEDICAL CENTER (UPMC), a | ) |
| Pennsylvania non-profit corporation, | ) |
| WESTERN PSYCHIATRIC INSTITUTE | ) |
| AND CLINIC, a division of UPMC, and | ) |
| JOHN/JANE DOE, | ) |
| | ) |
| Defendants. | ) |

**ORDER OF COURT**

Currently pending before the Court is the Report and Recommendation (ECF No. 29) filed
by the Honorable Kezia O. L. Taylor in the above-captioned matter. Judge Taylor's February 14,
2025 Report and Recommendation recommends that the Court grant, with prejudice, the Motion
to Dismiss (ECF No. 10) filed by Defendants, UPMC, Western Psychiatric Institute and Clinic,
and John/Jane Doe ("UPMC Defendants"), and grant, with prejudice, the Motion to Dismiss (ECF
No. 26) filed by Allegheny County and Jacob Porter ("County Defendants"). Objections to the
Report and Recommendation were due by February 28, 2025. Plaintiff filed timely Objections
(ECF No. 30) to the Report and Recommendation on February 28, 2025. UPMC Defendants filed
a Response (ECF No. 32) to the Objections on March 14, 2025. The Court considers this matter
to be ripe for disposition.

1

"The Federal Magistrates Act provides two separate standards of judicial review of orders on matters referred to magistrate judges." *Alarmax Distributors, Inc. v. Honeywell Int'l Inc.*, No. 2:14-cv-1527, 2015 WL 12756857, at *1 (W.D. Pa. Nov. 24, 2015) (citing 28 U.S.C. § 636(b)(1)). A district court reviews objections to a magistrate judge's decision on non-dispositive matters to determine whether any part of the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). A district court may only modify or set aside those parts of the order on non-dispositive matters that it finds to be clearly erroneous or contrary to law. *Id.* "A finding is 'clearly erroneous' when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pennsylvania, Dep't of Envtl. Prot. v. Allegheny Energy, Inc.*, No. 2:05-cv-885, 2007 WL 2253554, at *1 (W.D. Pa. Aug. 3, 2007) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). "A magistrate judge's order is contrary to law 'when the magistrate judge has misinterpreted or misapplied the applicable law.'" *Brandon v. Burkhart*, No. 1:16-cv-177, 2020 WL 85494, at *2 (W.D. Pa. Jan. 7, 2020) (quoting *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006)).

Objections to a magistrate judge's disposition of a dispositive matter are subject to de novo review before the district judge. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(3). The reviewing district court must make a de novo determination of those portions of the magistrate judge's report and recommendation to which objections are made. *Id.* Following de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further

2

evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The United States Court of Appeals for the Third Circuit has explained that, "even absent objections to the report and recommendation, a district court should 'afford some level of review to dispositive legal issues raised by the report,'" and has "described this level of review as 'reasoned consideration.'" *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

Upon a de novo review of Judge Taylor's Report and Recommendation, UPMC Defendants' Motion to Dismiss, County Defendants' Motion to Dismiss, Plaintiff's Objections to the Report and Recommendation, and UPMC Defendants' Response to Plaintiff's Objections, and following a review of all relevant docket entries, the Court agrees with the analysis and conclusions set forth in the Report and Recommendation, and will accept and adopt the Report and Recommendation as the Opinion of the Court, subject to the modification that the Court will allow Plaintiff to amend her claims as described below.

Plaintiff objects to the following four findings made in the Report and Recommendation:

1. The finding that Defendant UPMC is not a state actor;

2. The finding that the Defendants' failure to complete Part IV of the Application for Involuntary Emergency Examination and Treatment ("the application") which required that the Plaintiff be explained her rights, and Part V of the application, which required that the Plaintiff's personal property and the premises she occupies [be] secure, did not constitute[] a violation of Plaintiff's procedural due process rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983;

3. The finding that Plaintiff has not pled a viable claim pursuant to Title II of the Americans with Disabilities Act ("ADA"); and

4. The finding that Plaintiff's Municipal Liability Claim must be dismissed.

Obj. 4. The Court will address each objection in turn.

3

Appx021

Starting with Plaintiff's Objection that Judge Taylor improperly found that UPMC Defendants are not state actors. In reviewing the applicable law, the Court agrees with Judge Taylor's finding that Plaintiff has failed to plead sufficient facts for the Court to find that UPMC Defendants are state actors for purposes of Plaintiff's Section 1983 claim. Plaintiff's Complaint simply alleges that "[a]t all times relevant hereto, the [UPMC] Defendants were contracted with [County Defendants] to provide mental health services on behalf of [County Defendants], including, but not limited to, mental health services described in Section 302 of the [Mental Health Procedure Act]. Compl. ¶¶ 23, 58. As detailed by Judge Taylor, the mere existence of a contractual relationship with the state is insufficient to find that a hospital is a state actor. *See Cmty. Med. Ctr. v. Emergency Med. Servs.*, 712 F.2d 878, 881 (3d Cir. 1983); *see also Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015); *see also Hovis v. County of Lebanon*, Civil No. 1:24-CV-355, 2024 WL 4631830, at \*12 (M.D. Pa. Oct. 30, 2024); *see also Manley v. Horshal Clinic*, No. CIV. A. 00-4904, 2001 WL 894230, at \*6 (E.D. Pa. Aug. 9, 2021). For this reason, Plaintiff has failed to allege that UPMC Defendants are state actors.

While the Court agrees with Judge Taylor's findings that Plaintiff has failed to set forth facts that UPMC Defendants are state actors, the Court disagrees with Judge Taylor's finding that amendment would be futile. Courts in the Third Circuit have found, in limited circumstances, that hospitals that contract with a county to treat involuntarily committed patients are state actors, and, therefore, amendment would not be futile. As such, Plaintiff's Objection is overruled to the extent it argues that Judge Taylor improperly found that UPMC Defendants are not state actors, but is sustained, to the extent the Court finds that amendment would not be futile. This said, amendment is subject to Plaintiff's ability to amend her Section 1983 claim as detailed below.

4

The Court now turns to Plaintiff's second Objection, that Judge Taylor improperly found that Defendants did not violate Plaintiff's due process rights, pursuant to Section 1983, when they failed to complete Parts IV and V of the application. Plaintiff argues that her due process claim is based on Defendants' failure to complete the application and follow their own procedures, and not just Defendants' failure to comply with the MHPA, as analyzed by Judge Taylor. Obj. 11. Plaintiff argues that the application at issue was adopted by County Defendants for the purpose of involuntarily committing someone, and that the failure of Defendants to complete this application, i.e. the failure to Defendants to follow its own process, is a violation of Plaintiff's due process rights. *Id.*

The distinction is one without a difference. Judge Taylor properly found that "Section 1983 does not provide a cause of action for violations of state statutes[,]" which includes the MHPA. R&R 10. Additionally, Defendants' failure to follow its own process—the completion of the application—does not provide a cause of action under Section 1983. The application itself is based on the MHPA, and "violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution . . ., do not make out a claim under Section 1983." *Lee v. Schrader*, No. 2:13cv1757, 2014 WL 2112833, at *5 (W.D. Pa. May 20, 2014); *see Smith v. Pennsylvania*, Civil Action No. 21-5473, 2022 WL 3139854, *7 (E.D. Pa. Aug. 4, 2022) (finding that plaintiff's Section 1983 claim failed because the policy plaintiff alleged defendant violated was nothing more than the defendant's enforcement of the MHPA). For this reason, Judge Taylor properly dismissed Plaintiff's due process claim, based on allegations that Defendants failed to properly complete the application or comply with the MHPA.

Outside of the above argument, Plaintiff argues that Judge Taylor "seemingly disregards any due process rights in the involuntary civil commitment process, contrary to the Supreme

Court's acknowledgement in *Addington*." Obj. 13 n.4. Judge Taylor did not directly address *Addington*, however, Plaintiff ignores the fact that she has raised no substantial argument in either her Objections or briefing on the Motions to Dismiss, or any allegations in her Complaint, that identifies why the Supreme Court's holding is applicable to this case. Plaintiff instead simply states that in *Addington*, the Supreme Court found that involuntary commitment implicates a liberty interest protected by the due process clause. *See Addington v. Texas*, 441 U.S. 418, 425 (1979).

However, Plaintiff fails to address "the fact that in light of *Addington* and other cases concerning due process in civil cases, Pennsylvania courts have decided to construe commitments pursuant to [the MHPA] to require proof by clear and convincing evidence that a person represents a clear and present danger to himself or others." *Keyes v. Lynch*, 1:15-cv-457, 2015 WL 13594907, *10 (M.D. Pa. Nov. 9, 2015). This means, that due process requires that an individual be found to be a danger to herself, before she be involuntarily committed. *See Covell v. Smith*, Civil No. 95-501, 1996 WL 750033, at *4 (E.D. Pa. Dec. 30, 1996). Here, Plaintiff's allegations center around violations of the MHPA and not violations of Plaintiff's due process rights as protected by the Fourteenth Amendment, such as by a violation of the above standard of proof. Additionally, the Court maintains no particular confidence that Plaintiff can, in fact, allege in good faith that such a violation occurred in light of Plaintiff's failure, to date, to raise any such allegations. However, to the extent Plaintiff is able to assert such allegations in good faith, the Court will allow Plaintiff to amend her complaint.

The Court now turns to Plaintiff's third Objection, that Judge Taylor improperly found that Plaintiff had failed to allege a viable claim pursuant to the ADA against Defendant, Allegheny County. Obj. 13. Judge Taylor found that Plaintiff's ADA claim would fail "because there are no

6

facts to suggest that she was denied services based on her disability." R&R 15. In coming to this conclusion, Judge Taylor relied on Plaintiff's allegations concerning a "2014 study [that] put County Defendants on notice of deficiencies related to completing necessary paperwork related to 'the 302 process.'" *Id.* (internal citations omitted). Judge Taylor found that Plaintiff's own allegations that County Defendants' failure to complete necessary paperwork impacted other individuals, was enough to dismiss Plaintiff's ADA claim. *Id.*

The Court agrees with Judge Taylor's finding that Plaintiff has failed to state a claim under the ADA. Plaintiff has not adduced sufficient facts to demonstrate that, but for her disability, Allegheny County would not have denied her services. However, while making no ruling on the likely or ultimate viability of such a claim, the Court acknowledges Plaintiff's argument that she is attempting to allege a pattern or practice of discrimination, and, in an abundance of caution, the Court will allow Plaintiff to amend her claim, if in good faith she can do so.

Finally, the Court turns to Plaintiff's fourth Objection, that Plaintiff has pled a viable municipal liability claim against Defendant, Allegheny County. Obj. 12. Judge Taylor dismissed Plaintiff's municipal liability claim based on the finding that Plaintiff had failed to plead a valid Section 1983 claim and, therefore, had not alleged any constitutional violation in this case. R&R 12. Plaintiff argues that because she has pled a valid Section 1983 claim, she has pled a valid municipal liability claim. Judge Taylor is correct that Plaintiff's municipal liability claim should be dismissed based on the finding that Plaintiff has failed to plead a valid Section 1983 claim. However, as stated above, the Court will allow Plaintiff to amend her Section 1983 claim. Therefore, should Plaintiff be able to plead a valid Section 1983 claim as detailed above, the Court will hear any further argument on Plaintiff's municipal liability claim.

Upon consideration of Judge Taylor's February 14, 2025 Report and Recommendation, and following a de novo review of the relevant docket entries and the entire record in this matter, it is hereby ORDERED as follows:

The Court hereby accepts and adopts Judge Taylor's February 14, 2025 Report and Recommendation as the Opinion of the Court, with the modification that the Court will permit leave for Plaintiff to amend her claims as detailed by the Court above. Plaintiff's Objections to the Report and Recommendation are sustained, to the extent they ask that the Court allow her to amend her claims, and are otherwise, overruled. It is further ordered that UPMC Defendants and County Defendants Motions to Dismiss are granted. It is further ordered that Plaintiff shall file any amended complaint by April 28, 2025.

BY THE COURT:

/s/Robert J. Colville
Robert J. Colville
United States District Judge

DATED: March 28, 2025

cc: Honorable Kezia O. L. Taylor
    United States Magistrate Judge

    All counsel of record

8

 Gmail

Patricia Schmidt <joel.sansone.ecf@gmail.com>

## Activity in Case 2:24-cv-00805-RJC-KT KERR v. ALLEGHENY COUNTY et al Order Dismissing Case

1 message

**ecf_intake_pawd@pawd.uscourts.gov** <ecf_intake_pawd@pawd.uscourts.gov>
To: pawd_ecf@pawd.uscourts.gov

Tue, May 6, 2025 at 1:07 PM

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Western District of Pennsylvania**

### Notice of Electronic Filing

The following transaction was entered on 5/6/2025 at 1:07 PM EDT and filed on 5/6/2025
**Case Name:**      KERR v. ALLEGHENY COUNTY et al
**Case Number:**    2:24-cv-00805-RJC-KT
**Filer:**
**WARNING: CASE CLOSED on 05/06/2025**
**Document Number:** 37(No document attached)

**Docket Text:**
ORDER: In light of Plaintiff's deadline for amendment having passed, and Plaintiff having explicitly stated that she does not intend to amend and prefers to take the matter up on appeal [36], the Court hereby dismisses this case with prejudice. Signed by Judge Robert J. Colville on 5/6/25. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (cjo)

**2:24-cv-00805-RJC-KT Notice has been electronically mailed to:**

Massimo A. Terzigni   mterzigni@joelsansonelaw.com, joelsansonelaw@gmail.com

Dennis R. Biondo, Jr   dennis.biondojr@alleghenycounty.us, dennis.biondojr@gmail.com, jamie.mandrier@alleghenycounty.us, mwoodfork@alleghenycounty.us

Elizabeth Tuttle   etuttle@joelsansonelaw.com, joelsansonelaw@gmail.com

Steven L. Ettinger   settinger@dmclaw.com, rtraficante@dmclaw.com

Joel S. Sansone   jsansone@joelsansonelaw.com, Joel.Sansone.ECF@gmail.com, joelsansonelaw@gmail.com, kridjaneck@joelsansonelaw.com

Jeffrey J. Wetzel   jwetzel@dmclaw.com, hkiser@dmclaw.com

Kelly B. Cullen   kcullen@dmclaw.com, nmcknight@dmclaw.com

**2:24-cv-00805-RJC-KT Filer must deliver notice by other means to:**

Appx027

<u>CERTIFICATE OF SERVICE</u>

This hereby certifies that on the 18th day of August, 2025, a true and correct copy of the foregoing documents, Brief for Appellant and Joint Appendix, Volume I, were served upon the following by ECF transmission which service satisfies the requirements of F.R.A.P. 25:

Dennis R. Biondo, Jr., Esquire
dennis.biondojr@allegheny.us
445 Fort Pitt Blvd.
Pittsburgh, Pennsylvania 15219
*Counsel for Allegheny County
and Jacob Porter*

Kelly B. Cullen, Esquire
kcullen@dmclaw.com
Steven L. Ettinger, Esquire
settinger@dmclaw.com
Jeffrey J. Wetzel, Esquire
jwetzel@dmclaw.com
444 Liberty Avenue, Suite 100
Pittsburgh, Pennsylvania 15222
*Counsel for UPMC and Western
Psychiatric and Clinic*

In addition, seven copies were also sent by first-class mail to the office of the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

/s/Elizabeth A. Tuttle
Elizabeth A. Tuttle, Esquire
etuttle@joelsansonelaw.com
PA ID No. 322888
Massimo A. Terzigni, Esquire
mterzigni@joelsansonelaw.com
PA ID No. 317165

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194
*Counsel for Appellant/Plaintiff*